UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM LEE THOMPSON,

Plaintiff,

v. Case No. 3:26-cv-2574-JEP-SJH

RICHARD D. COMERFORD, et al.,

Defendants.

---

**ORDER**

This cause is before the Court on Plaintiff's Renewed Ex Parte Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction and Incorporated Memorandum of Law[1] ("**Renewed Motion**," Doc. 18), with exhibits (Docs. 18-1 to 18-12, 19-1, 29-1 to 29-3), and Defendants' Responses in Opposition[2] (Docs. 45, 46) thereto, with exhibits (Docs. 45-1, 46-1). In the Renewed Motion, Plaintiff requests an order directing Defendants to immediately transport him by medically appropriate means to a medical facility, either within or outside the Florida Department of

[1] The Court denied without prejudice Plaintiff's original Ex Parte Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction on September 28, 2026. (*See* Docs. 7, 11).

[2] Defendants' Responses were filed pursuant to the Court's Endorsed Order (Doc. 33).

Corrections, to provide him with adequate medical care until qualified treating physicians determine that his discharge is medically safe. (Doc. 18 at 2, 26). Plaintiff explains that after his death warrant was signed on September 11, 2026, which set his execution date for October 13, 2026, Defendants removed him from the infirmary at Union Correctional Institution and transferred him to death watch at Florida State Prison ("**FSP**"), where he is allegedly housed without adequate medical care. (*Id.* at 3). Defendants argue, and the Court agrees, that Plaintiff's Renewed Motion should be denied. (Docs. 45, 46).

Plaintiff's Renewed Motion is nearly identical in substance[3] to his original Motion, which the Court denied for Plaintiff's failure "to meet his heavy burden of showing that the extraordinary and drastic remedy of injunctive relief is warranted."[4] (Doc. 11 at 4). Even with the benefit of Plaintiff's elaborated arguments and additional exhibits, Plaintiff still has failed to show that injunctive relief is warranted in this case. As stated previously, to the extent Plaintiff seeks to obtain the affirmative relief sought

---

[3] In the Renewed Motion, Plaintiff briefly discusses the standard for mandatory injunctive relief, addresses the security requirement under Federal Rule of Civil Procedure 65(c), includes a proposed order, and attaches photographs of his injuries, but otherwise essentially repeats the same arguments and relies on the same exhibits as his original Motion. (*See* Docs. 18, 19-1, 29-3).

[4] The heightened standard for granting mandatory injunctive relief was included in the Court's prior Order and will not be repeated here. (*See* Doc. 11).

in the Complaint on an expedited basis, rather than to preserve the status quo, he has not shown that "the facts and law clearly favor" him. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).[5]

Moreover, even if the heightened standard for mandatory injunctions did not apply in this case, Plaintiff's Renewed Motion would still fail because he has not shown "a substantial likelihood of success on the merits."[6] *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). As Defendants point out,[7] Plaintiff has failed to state a plausible claim for deliberate indifference because his "allegations are contradicted by his own medical records, as confirmed by the sworn declaration of Centurion Statewide

---

[5] All Fifth Circuit decisions entered before October 1, 1981 were adopted by the Eleventh Circuit as binding precedent. *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[6] For purposes of deciding Plaintiff's Renewed Motion, the Court agrees with Defendants that Plaintiff's submissions to date do not show he properly exhausted his administrative remedies prior to filing this action, which is an additional reason for denying the Renewed Motion. (*See* Docs. 45, 46). However, the Court will address the issue of exhaustion, if necessary, on a more complete record after all Defendants have had an opportunity to respond to Plaintiff's Complaint. (*See* Doc. 45 at 6 (stating that "the Medical Defendants intend to move to dismiss Plaintiff's Complaint for his failure to exhaust his administrative remedies")). So far, only Attorney General James Uthmeier has responded to the Complaint by filing a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Doc. 44).

[7] Additionally, the Court agrees with Defendants that "Plaintiff fails to include *any* allegations against the Medical Defendants, individually, and instead cursorily contends that Defendants, as a whole, were deliberately indifferent to him," and "as to Centurion, Plaintiff fails to allege an unconstitutional policy or practice as to give rise to a claim for municipal liability." (Doc. 45 at 8–9 (emphasis in original)).

Medical Director, Dr. John Lay." (Doc. 45 at 9; Doc. 46 at 12). In his Declaration, Dr. Lay avers, in relevant part, as follows:

> 7. I have received the inmate medical records of Inmate Thompson and have personal knowledge of his care at FSP.
>
> 8. Mr. Thompson is currently housed in the medical department at FSP with capacity to care for his medical concerns.
>
> 9. Since his arrival to FSP on September 11, 2026, Mr. Thompson has been receiving daily medical evaluations and is eating and drinking on his own, as well as taking his oral medications.
>
> 10. Mr. Thompson is receiving infirmary-level care at FSP, at the same level of care he received at the Union Correctional Institution.
>
> 11. All medical decisions regarding Mr. Thompson's care have been made based on clinical judgment and in line with what is medically appropriate for his individual medical concerns.
>
> 12. Specifically, my review of the medical record for Mr. Thompson as of today, October 2, 2026, documents that he is actively receiving the following care:
>
> > • A review of his vital signs dated 10/1/2026 show medical stability, with a BP of 113/97, Pulse of 89 and Oxygen Saturation of 97% on room air. His saturation levels are reassuring for an effective cardiac response and control of his chronic congestive heart failure.
> >
> > • Additionally, Mr. Thomspon is afebrile with a temperature of 98.2, which in combination with other vital signs, shows a lack of sepsis.
> >
> > • To treat his chronic congestive heart failure, Mr. Thompson is receiving Furosemide daily. This is a standard regimen for similarly situated patients.

• Mr. Thompson is also currently receiving Eliquis, a blood thinner meant to reduce the risk of thrombosis and pulmonary embolus.

• Mr. Thompsons' lab results taken on 10/2/2026 show normal platelet counts and resolved liver function enzymes. His albumin and protein, markers for decreased liver function, remain below normal but are improving, indicat[ing] improved liver function.

• For wound care, Mr. Thompson is being seen every two hours for turning and repositioning. He is on a low air loss mattress to reduce pressure. He was previously being treated with oral Clindamycin, however, based on a recent wound culture lab results, he is being transitioned to Meropenem, a powerful broad-spectrum antibiotic to help prevent wound infections. Although there are no active signs of infection or [s]epsis, the antibiotic regimen has been given prophylactically to prevent infection.

• Mr. Thomspon remains alert and oriented x3, and is capable of participating in his medical care. He self-feeds and has been seen in the canteen eating a regular diet. His BMI is 23.9, indicating stable weight. In addition, he is receiving Boost supplementation, to help with protein and wound healing capacity.

13. Based on my education, training, experience, personal knowledge of Inmate Thompson's care, and review of his medical records, it is my professional opinion that the medical care Inmate Thompson is receiving at FSP is clinically appropriate and consistent with the applicable standard of care for a patient in his condition within a correctional healthcare setting.

(Doc. 45-1 at 2–4).

Further, while the Court has considered Plaintiff's experts' opinions, only one of those experts (Dr. Robert H. Ouaou, a neuropsychologist) has

examined Plaintiff, most recently on September 14, 2026, while the other experts (Dr. Joel Zivot, Dr. Charles Howard, and Dr. Alisha Benner) have rendered their opinions solely based on a review of incomplete medical records. (*See* Docs. 18-2, 18-3, 18-4, 18-5). As Defendants point out, to the extent Plaintiff asks the Court to rely on these non-examining expert opinions, Plaintiff "steer[s] the Court to apply an objective standard of recklessness" (Doc. 46 at 12–14), rather than the correct subjective reckless standard used in deliberate indifference cases. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Farmer v. Brennan*, 511 U.S. 825, 836–40 (1994); *see also Wade v. McDade*, 106 F.4th 1251, 1253, 1257–58, 1262 (11th Cir. 2024).

Based on the foregoing, Plaintiff has failed to demonstrate a substantial likelihood of success on the merits to warrant injunctive relief. As such, the Court need not address the other requirements for obtaining injunctive relief, namely, the irreparable injury prong and the balance of harm and public interest prong. *See Schiavo*, 403 F.3d at 1225–26. The Court notes, however, that it would be very difficult for Plaintiff to show that he would suffer irreparable injury if he is not transferred to another facility, considering Dr. Lay's averment that Plaintiff is already "receiving infirmary-level care at FSP." (Doc. 45-1 at 2). Also, to the extent Plaintiff seeks injunctive relief to compel his medical providers to blindly follow previous treatment

recommendations from outside hospitals, the balance of harm and public interest would not favor a transfer. (*See* Doc. 45 at 15; Doc. 46 at 5, 10). In sum, Plaintiff has not shown that injunctive relief is warranted here.

Accordingly, Plaintiff's Renewed Motion (Doc. 18) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of October, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Jax-11
c:
Counsel of Record